**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 11-61819-Civ-COOKE/TURNOFF**

TERRENCE A. DAVIS,

      Plaintiff

vs.

BROWARD COUNTY, FLORIDA, et al.,

      Defendants.

_____/

## ORDER OF DISMISSAL

THIS MATTER is before me on the motions to dismiss filed by Defendants Castle Hill

Elementary School and Broward County School Board of Public Instruction (ECF No. 8), Judge

Marina Garcia-Wood (ECF No. 26), Alfred T. Lamberti (ECF No. 27), and Michael Satz (ECF

No. 29). I have reviewed the record, the arguments and the relevant legal authorities. For the

reasons explained below, the motions are granted and this case is dismissed in its entirety.

### BACKGROUND AND PROCEDURAL HISTORY

On or about October 17, 2008, *pro se* Plaintiff Terrence A. Davis was charged with

criminal burglary (Count I) and aggravated battery with a deadly weapon and/or domestic

violence (Count II). Following his arrest, Mr. Davis entered a plea of not guilty. Mr. Davis

claims that on November 13, 2008, Michael Satz, State Attorney of the Seventeenth Judicial

Circuit of Florida, modified the charge of aggravated battery to felony battery with great bodily

harm.[1] The Complaint, as well as the proposed Amended Complaint, provides confusing

---

[1] A person commits aggravated battery when, in committing battery, he or she uses a deadly
weapon or intentionally or knowingly causes great bodily harm to the victim. *See* Fla. Stat.
784.045. A person commits felony battery if he or she causes great bodily harm by intentionally
striking another person against their will. *See* Fla. Stat. 784.041.

information regarding Mr. Davis' trial history.[2]   Mr. Davis was tried twice on the same indictment.  The first trial apparently resulted in a mistrial on September 9, 2009.  At the second trial ending on December 8, 2009, the State Attorney dropped Count II, and the jury found Mr. Davis not guilty as to Count I.

This litigation is premised on the Defendants alleged unlawful actions that lead to Mr. Davis' arrest, their conduct during trial, and the penalties they enforced after Mr. Davis was released from custody.  The Defendants range from state and county entities/agencies, state and county officials, public and private attorneys, school boards and educational systems, as well as individual Defendants.  Mr. Davis makes a blanket allegation that the Defendants conspired to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), conspired to violate Mr. Davis' constitutional rights, conspired to interfere with his parental rights, conspired to commit fraud, and conspired to obstruct justice and fabricate evidence.  Mr. Davis also alleges that the State Attorney violated the Florida Bar Rules of Processional Conduct.

In his first claim for relief, Mr. Davis alleges that he and his minor children "were sacrificed on the alter of the State Attorney's vindictive prosecution methods" and that Judge Marina Garcia-Wood's court orders violated his constitutional rights.  (Compl. at 9, ECF No. 1). Mr. Davis also alleges that his criminal and civil attorneys, Louis Peronti and Andrean Eaton, are guilty of consumer fraud, deceptive trade practices and breach of fiduciary duty.  The second claim for relief alleges that Deputy Sheriff Demos Charoudis, Deputy Sergeant L. Samuels and Deputy Ronald Faircloth failed to collect evidence at the scene of the crime or produced false testimony at trial.  The claim further alleges that Broward County, the Broward County Sheriff's

---

[2] Although I have not ruled on Mr. Davis' motion to amend, I have considered the proposed Amended Complaint's factual and legal allegations prior to ruling on the pending motions to dismiss.

Department and Sheriff Alfred Lamberti are liable under the doctrine of *respondeat superior*. Claim three alleges that Diane Nelson, Robert Vaughn and Cherine Smith Valbrun conspired to present "untrue, false, fabricated, vindictive testimony and evidence to the court." (*Id.* at 15). In the prayer for relief, Mr. Davis alleges that Castle Hill Elementary School ("Castle Hill") and the Broward County School Board of Public Instruction ("Broward School Board") violated Chapter 61, Florida Statutes, by failing to provide Mr. Davis with his minor children's educational records. The proposed Amended Complaint also asserts a claim against Castle Hill, Broward School Board, Linda Berlin, Kimberlee Trinkofsky, Daniele Davis, Robert Vaughn and Cherine Smith, alleging violations of the Family Education and Privacy Rights Act ("FERPA"), 20 U.S.C. § 1232g.

On October 14, 2011, Castle Hill and the Broward School Board filed a Motion to Dismiss (ECF No. 8), claiming that this Court lacks jurisdiction because Mr. Davis has no private cause of action under the applicable laws. Mr. Davis filed a response to the Motion and simultaneously filed a Motion for Leave to File Amendment to Complaint (ECF No. 12). Judge Marina Garcia-Wood filed a Motion to Dismiss on November 28, 2011 (ECF No. 26), followed by Alfred Lamberti on November 27, 2011 (ECF No. 27), and Michael Satz on November 29, 2011 (ECF No. 29). In response, Mr. Davis filed an omnibus motion for extension of time to file a second amended complaint and to appoint counsel, along with a substantive response in opposition to the four pending motions to dismiss.

### LEGAL STANDARD

A complaint "must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570, 127 S. Ct. 1955 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  Detailed factual allegations are not required, but a pleading "that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555.  While plausibility is not the same as probability, this new plausibility standard asks for more than a "sheer possibility that a defendant has acted unlawfully." *Id.* Accordingly, Federal Rule of Civil Procedure 8(a) requires that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007).  "[W]ell-pled allegations must nudge the claim across the line from conceivable to plausible." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009). When considering a motion to dismiss filed under Rule 12(b)(6), a court's consideration is limited to the complaint and any incorporated exhibits.  *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).  The court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

A *pro se* litigant's pleadings must be construed more liberally than pleadings drafted by attorneys.  *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Accordingly, I have carefully reviewed Mr. Davis' pleadings and have identified as many causes of action as legally possible.  However, the leniency afforded Mr. Davis "does not give a court license to serve as de facto counsel for a party … or to rewrite an otherwise deficient pleading in order to sustain an action."  *GJR Inv., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir.1991).  Nor does the liberal

construction extend to a *pro se* litigant's failure to comply with either federal procedural rules or local court rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (explaining that the Court "never suggested that procedural rules in ordinary civil litigation shall be interpreted to as to excuse mistakes by those who proceed without counsel," because "experience teaches that strict adherence to the procedural requirements specified by legislature is the best guarantee of evenhanded administration of the law").

D<small>ISCUSSION</small>

### *RICO Violations*

Mr. Davis contends there is a "substantial likelihood" that the Defendants' alleged conspiring activities constitute a RICO violation. (Compl. at 8). The Complaint, however, fails to identify a specific RICO violation. The most applicable provision appears to be 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). A person alleging a RICO violation under § 1962 is required to establish that the violation was the proximate cause of his injuries. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008).

RICO defines racketeering activity to be (1) any violation of state statutes against murder, kidnapping, gambling, arson, robbery, bribery, extortion dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in the Controlled Substances Act); (2) any act of bribery, counterfeiting, theft, embezzlement, fraud, dealing in obscene matter, obstruction of justice, racketeering, gambling, money laundering, commission of murder for hire, and several offenses covered under the Federal Criminal Code (Title 18); (3) embezzlement of union funds;

(4) bankruptcy fraud or securities fraud; (5) drug trafficking; (6) money laundering and related offenses; (7) bringing in, aiding or assisting aliens in illegally entering the country (if the action was for financial gain); or acts of terrorism. *See* 18 U.S.C. § 1961(1) (2006). A "pattern of racketeering activity" requires at least two acts of racketeering activity. 18 U.S.C. § 1961(5). By definition, an enterprise "includes any individual, partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). An enterprise also "includes any union or group of individuals associated in fact" where the group is "associated for the common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). An enterprise "must have some longevity, since the offense proscribed by [§ 1962(c)] demands proof that the enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity.'" *Boyle v. United States*, 556 U.S. 938, 129 S. Ct. 2237, 2245 (2009).

On its face, Mr. Davis' RICO violation claim fails for three reasons. First, the alleged actions do not, and cannot, establish a pattern of racketeering activity. The only allegation that even remotely falls within RICO's prohibited activities is claim that certain Defendants obstructed justice during Mr. Davis' criminal investigation and trial. A lone act of racketeering activity is insufficient to satisfy the statutory pleading requirements. *See* 18 U.S.C. § 1961(5). In addition, the Complaint's factual predicate cannot support a finding of an associated enterprise of longevity. Mr. Davis also fails to claim how, if even possible, the alleged RICO violation was the proximate cause of his injuries. Accordingly, the RICO claims must be dismissed.

### *Violation of Florida Bar Rules of Processional Conduct*

Mr. Davis alleges that the State Attorney deliberately refused to turn over 911 tapes the prosecution intended to use during trial and failed to require Mr. Davis' estranged wife, Daniele

Davis, to appear at her scheduled depositions in June 2009. Mr. Davis concludes that his inability to acquire specific evidence and testimony was the direct result of the State Attorney's violation of the Florida Bar Rules of Professional Conduct.

The Rules of Professional Conduct protects against the destruction or concealment of evidence.

> A lawyer shall not: (a) unlawfully obstruct another party's access to evidence or otherwise unlawfully alter, destroy, or conceal a document or other material that the lawyer knows or reasonably should know is relevant to a pending or a reasonably foreseeable proceeding … (b) fabricate evidence, counsel or assist a witness to testify falsely … [or] (f) request a person other than a client to refrain from voluntarily giving relevant information to another.

Fla. Rules of Prof'l Conduct R. 4-3.4.

Under the Rules, a prosecutor has the responsibility of a minister of justice and an obligation to ensure that guilt is decided upon the basis of sufficient evidence. Criminal prosecutors must "refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause" and "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense." Rule 4-3.8. The Rules also prohibits a lawyer from engaging in prejudicial or discriminatory conduct. Rule 4-8.4(d).

Although lawyers are subject to discipline when they violate the Rules, "Bar disciplinary proceedings are quasi-judicial rather than civil or criminal." *The Fla. Bar v. D'Ambrosio*, 25 So. 3d 1209, 1215 (Fla. 2009); *see also* Rule 3-4.2. Complaints relating to lawyer misconduct are subject to an internal investigation by the Florida Bar and referred to the Florida Supreme Court for affirmation, if necessary. *See* art. V, § 15, Fla. Const. ("The supreme court shall have exclusive jurisdiction to regulate the admission of persons to practice law and the discipline of

persons admitted.").  Mr. Davis' claims against the State Attorney are dismissed for lack of jurisdiction because this is not the proper forum to adjudicate attorney misconduct.

### *Interference With Parent-Child Relationship*

Mr. Davis seeks a permanent injunction against Mrs. Davis to restrain her from "damaging, destroying or interfering with the legally protected parent-child relationship." (Compl. at 10).  To secure an injunction, a plaintiff must prove four elements: "(1) a substantial likelihood on the merits; (2) irreparable injury absent an injunction; (3) the injury outweighs whatever damage an injunction may cause the opposing party; and (4) an injunction is not adverse to the public interest."  *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1217 (11th Cir. 2009) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).  Florida recognizes a cause of action for tortious interference with a parent-child relationship by a *non-parent*.  *Stone v. Wall*, 734 So. 2d 1038 (Fla. 1999).  A plaintiff alleging such a relational interference must establish (1) an intentional effort by the defendant to detract the child from the parent's custody or service; (2) that the effort was willful; and (3) that the defendant knowingly invaded the child's parent's rights.  *Id.* 1042-1043.  "A key element of the cause of action is that 'the plaintiff had superior custody rights to the child and that the defendant intentionally interfered with those rights.'"  *Steward v. Walker*, 5 So. 3d 746, 748 (Fla. Dist. Ct. App. 2009) (quoting *Stone*, 734 So. 2d at 1042)).  Mr. Davis' does not meet the threshold requirements to obtain an injunction against Mrs. Davis because Florida does not recognize a tortious interference cause of action against a parent.

The federal judiciary traditionally refrains from deciding cases concerning domestic relations.  *See Ingram v. Hayes*, 866 F.2d 368, 369 (11th Cir. 1988) (citing *Crouch v. Crouch*, 566 F.2d 486 (5th Cir.1978)).  As a result, I must dismiss Mr. Davis' claims because they

involve child custody, visitations rights, and other related matters. *See id.*  Mr. Davis may,

however, seek to protect his parental rights in Family Court, which is the proper forum for the

dispute.

### Unlawful Termination of Parental Rights and Violation of 42 U.S.C. § 1983

Mr. Davis claims that Judge Garcia-Wood deprived him of his parental rights and

discriminated against him on the account of his gender, in violation of 42 U.S.C. § 1983.[3]

Section 1983 makes it unlawful for government employees or municipalities to deprive an

individual of his rights under the Constitution.

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress, except that in
> any action brought against a judicial officer for an act or omission taken in such
> officer's judicial capacity, injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.[4]

To prevail on a claim under § 1983, a plaintiff must demonstrate "(1) that the defendant

deprived [him] of a right secured under the Constitution or federal law and (2) that such a

deprivation occurred under color of state law." *Arlington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th

Cir. 1998) (citing *Willis v. Univ. Health Serv.*, 993 F.2d 837, 840 (11th Cir. 1993)).  To state a

---

[3] Mr. Davis' allegations of gender discrimination are premised on the adverse impact Judge
Garcia-Wood's ruling had on his parental rights.  Mr. Davis contends that he did not waive his
parental rights, yet fails to allege any fact that could even remotely support a viable claim for
discrimination.

[4] Judge Garcia-Wood, who acted in her official capacity at all times relevant to this cause of
action, is not a "person" within the meaning of § 1983. *See Will v. Michigan Dept. of State
Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their
official capacities are 'persons' under § 1983.").

valid § 1983 claim, "a plaintiff must point to a violation of a specific federal right." *Robertson v. Hecksel,* 420 F.3d 1254, 1256 (11th Cir. 2005) (quoting *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir. 1996)). "A parent's due process right in the care, custody, and control of [his] children is 'perhaps the oldest of the fundamental liberty interest recognized by [the Supreme] Court.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion)).

As a threshold matter, Judge Garcia-Wood is immune from suits for damages based on her judicial conduct, absent taking a judicial action "in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-357 (1978). Mr. Davis contends that Judge Garcia-Wood acted in the clear absence of jurisdiction when she failed to hold a full evidentiary hearing on a matter that ultimately impacted Mr. Davis' parental rights. I disagree. At the time of Mr. Davis' arrest, Judge Garcia-Wood was a family law judge in the Seventeenth Judicial Circuit in and for Broward County Florida. Based on Mr. Davis' allegations, the Family Court retained jurisdiction over Mr. Davis' family dispute when he was arrested for domestic violence. Fla. Stat. § 741.30 (circuit court has jurisdiction causes of action for an injunction for protection against domestic violence). Therefore, Judge Garcia-Wood had jurisdiction to enter an injunction against Mr. Davis.[5] *See Buchan v. Hibbard,* 940 So.2d 533, 534 (Fla. Dist. Ct. App. 2006). Even assuming that Judge Garcia-Wood entered the injunction without a full evidentiary hearing, "[a] judge will not be deprived of immunity because the action [she] took was in error, was done maliciously, or was in excess of [her] authority." *Sparkman*, 435 U.S. at 356. In addition, and to the extent that Mr. Davis challenges the "de facto illegal termination of parental

---

[5] Neither the Complaint nor the proposed Amended Complaint provides information regarding the injunction's subject matter or restrictions.

rights," that claim is jurisdictionally barred by the *Rooker-Feldman* doctrine.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005).[6]

### Consumer Fraud and Deceptive Trade Practice

Mr. Davis retained Louis Peronti and Andrean Eaton as legal counsel in his criminal and civil matters, respectively.  Mr. Davis alleges that both Defendants are guilty of consumer fraud and deceptive trade practices because "they were not qualified and competent" to successfully manage his cases.  (Compl. at 15).  The elements of fraud under Florida law are: "(1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation."  *Horne v. Social Sec. Admin.*, 359 F. App'x 138, 145 (11th Cir. 2010) (quoting *Lopez-Infante v. Union Cent. Life Ins. Co.*, 809 So. 2d 13, 15 (Fla. Dist. Ct. App. 2002)).  Pursuant to Federal Rule of Civil Procedure 9(b), a party alleging fraud "must state with particularity the circumstances constituting the fraud."  Fed. R. Civ. P. 9(b).  In order to satisfy Rule 9(b), a plaintiff must set forth: (1) the precise statements, oral representations or omissions made; (2) the time, place and person making of each statement (or, in the case of omissions, not making); (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud.  *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citations omitted). Mr. Davis fails to allege the elements of fraud with particularity.  Reading both versions of the Complaint, liberally and as a whole, Mr. Davis merely alleges that he was unsatisfied with the results of his legal representation.  Mr. Davis does not allege what false statements were made,

---

[6] The *Rooker-Feldman* doctrine precludes a losing party in state court from filing suit in a U.S. District Court in effort to have the federal court overturn the state court's final judgment.  *See Exxon*, 544 U.S. 280.

how or why Defendants knew or should have known the information was false or how the alleged misrepresentations resulted in injury to Mr. Davis.

To the extent that Mr. Davis' seeks damages under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), that claim fails to state a cause of action as well.  The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202.  To establish a claim under FDUTPA, a plaintiff must prove that the defendant's conduct was (1) unfair and deceptive and (2) that he was injured by the act.  *State of Fla., Office of Atty. Gen., Dept. of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005).  It has been suggested that conduct is unfair when it "offends established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Id.* at 1310 (quoting *Betts v. Advance Am.*, 213 F.R.D. 466, 482 (M.D. Fla. 2003).  Mr. Davis does not provide legal or factual justification for his FDUTPA allegations.  Dissatisfaction with an adverse judgment does not equate to an "unfair or deceptive act" on the part of the attorneys who provided the legal representation.  If Mr. Davis wishes to file an action for legal malpractice, he may do so in a Florida state court.

It is possible that Mr. Davis is also attempting to allege that Mr. Peronti failed to provide effective assistance of counsel in his criminal trial.  A claim of ineffective assistance of counsel requires the plaintiff to establish: (1) deficient performance – that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice – but for the lack in representation, there is a reasonable probability that the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Chandler v. United States*, 218

F.3d 1305, 1312 (11th Cir. 2000) (en banc).  The court may approach the inquiry in any order, and if the plaintiff makes an inefficient showing on one element then the court is not required to complete the inquiry.  *Strickland*, 466 U.S. at 697.  Thus, a court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied.  *Id.* at 697; *Waters v. Thomas*, 46 F.3d 1506, 1510 (11th Cir. 1995).  Aside from challenging Mr. Peronti's competence, Mr. Davis does not provide a factual basis to support the finding that Mr. Peronti's representation fell below an objective standard of reasonableness.  Because Mr. Davis has failed to meet his burden under *Strickland*, the cause of action must be dismissed to the extent it rests on this claim.  *Strickland*, 466 U.S. at 697.

### Negligent Investigation and Presentation of Falsified Evidence

Mr. Davis alleges that Deputy Sheriff Charoudis and Deputy Faircloth deprived him of his constitutionally protected rights when they negligently failed to collect evidence, falsified evidence and/or provided untruthful testimony during Mr. Davis' criminal investigation.[7]   A plaintiff seeking relief under § 1983 must establish that the defendant took a "deliberate action" towards violating the plaintiff's constitutional rights.  *Williams v. City of Albany*, 936 F.2d 1256, 1261 (11th Cir. 1991).  Negligent investigation is not a valid cause of action under § 1983 because negligence is not a deliberate act.  *Id.*  Similarly, a deputy who relies upon a witness statement, which, if believed, would support a criminal charge, cannot be held liable for damages because "the investigating officer presenting that witness to the proper authorities [should be able to do so] without fear of personal liability, absent subordination of perjury."  *Id.* at 1260.

---

[7] As pled, the allegations against Deputy Samuels fail to state sufficient facts that provide any relevance to the case at issue.

Absent a valid cause of action, the claims against Deputy Sheriff Charoudis and Deputy Faircloth must be dismissed.

Given a liberal construction, it appears as though the Complaint also attempts to allege that Broward County, the Broward County Sheriff Department, and Sheriff Lamberti, in his official capacity as Broward County Sheriff, are liable under the theory of *respondeat superior* for the actions of Deputy Sheriff Charoudis and Deputy Faircloth. Government municipalities, counties and local government entities cannot be held liable for § 1983 violations on the basis of *respondeat superior*. *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 694 (1978); *see also McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A government entity may only incur § 1983 liability where its own policy or custom inflicts the injury. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Notwithstanding the dismissal of the Mr. Davis' negligent investigation and false evidence claims, the *respondeat superior* claims must be dismissed for failure to state a cause of action. The Complaint fails to identify a single policy or custom that directed Deputy Sheriff Demos Charoudis and Deputy Ronald Faircloth to conduct the activities complained of. Also, as with Judge Garcia-Wood, Sheriff Lamberti is not a "person" within the meaning of § 1983 and therefore cannot be held liable under the statute. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

### *Conspiracy to Fabricate Evidence*

Mr. Davis also alleges that Diane Nelson, Robert Vaughn and Cherine Smith Valbrun conspired to present false, fabricated evidence and testimony during the criminal investigation. In order to plead a cause of action for civil conspiracy, a plaintiff must allege: (1) an agreement between two or more parties, (2) to do an unlawful act by unlawful means, (3) the doing of some

overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997). In Florida, a claim of civil conspiracy requires a showing of "an independent wrong or tort which would constitute a cause of action if the wrong were done by one person." *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990) (citations omitted). *See also Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1089 (11th Cir. 2004) ("The cause of action for civil conspiracy lies not in the conspiracy itself, but in the underlying tort committed against the plaintiff and the resulting damage.").

The fabrication of evidence claim is, in essence, a claim for obstruction of justice. Although Mr. Davis does not provide the statutory basis for his claim, any claim for obstruction of justice under 18 U.S.C. § 1510 or Fla. Stat. § 843 would be futile because, under both statutes, obstruction of justice is a criminal charge that does not provide for a private cause of action. *See Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960), *cert. denied*, 365 U.S. 838 (1961). However, a civil cause of action for obstruction of justice exists under 42 U.S.C. § 1985 where "two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws." 42 U.S.C. § 1985(2) (2006). "Section 1985(3) provides a remedy for a conspiracy to interfere with civil rights." *Kivisto v. Miller, Canfield, Paddock and Stone, PLC*, 413 F. App'x 136, 139 (11th Cir. 2011). To state a cause of action under § 1985(3), a plaintiff must allege (1) conspiracy, (2) for the purpose of depriving a person or class of persons of the equal protection under the laws, or of equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, (4) resulting in an injury or deprivation of any right or privilege of a citizen of the United States. *Id.* (citing *Childree v. UAP/GA AG CHEM,*

*Inc.*, 92 F.3d 1140, 1146-47 (11th Cir. 1996)).  "To prove the second element, the plaintiff must show that the deprivation of rights or privileges occurred as a result of some 'racial, or … otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'"  *Id.* (quoting *Childree*, 92 F.3d at 1147)).  Although Mr. Davis claims the Defendants conspired to present falsified evidence to the Court, Mr. Davis fails to identify the underlying constitutional violation and fails to plead a single fact to support an allegation that there was a "discriminatory animus" behind the Defendants' actions.  The claims for conspiracy to fabricate evidence must therefore be dismissed.

### *Violation of Chapter 61, Florida Statutes and the Family Education and Privacy Rights Act*

In his last claim, Mr. Davis alleges that the Castle Hill and Broward School Board violated Chapter 61, Florida Statues, by failing to provide Mr. Davis with his minor children's educational records.  Chapter 61 provides statutory guidelines for the dissolution of marriage, distribution of marital property, child custody, and child support issues, and is intended to "promote the amicable settlement of disputes that arise between parties to a marriage…and to mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage."  Fla. Stat. §§ 61.001(2)(b)(c).  Section 61.13 describes a court's role in issuing orders related to parenting, time-sharing, child support, and access to information.

> Access to records and information pertaining to a minor child, including … school records, may not be denied to either parent. Full rights under this subparagraph apply to either parent *unless a court order specifically revokes these rights, including any restrictions on these rights as provided in a domestic violence injunction*. A parent having rights under this subparagraph has the same rights upon request as to form, substance, and manner of access as are available to the other parent of a child.

Fla. Stat. § 61.13(2)(c)(3) (emphasis added).[8]  Section 61.13, however, does not create a private cause of action against schools who do not grant a parent access to a child's school record.

In the alternative, the proposed Amended Complaint alleges violations under FERPA. FERPA gives parents certain rights with respect to their children's education records.  For example, parents have the right to inspect and review the student's educational records or request that a school correct student records believed to be inaccurate or misleading.  As explained by the United States Supreme Court, "even where a statute is phrased in such explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private right but also a private remedy.'"  *Gonzaga University v. Doe*, 536 U.S. 273, 284 (2002) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (emphasis in original).  Although the FERPA grants parents the right to review a child's educational record, the Act does not confer a private cause of action.  *Id.* at 290.

***Motion for Leave to File Second Amended Complaint***

Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its pleading once as a matter of course at any time before a responsive pleading is served.  However, a district court need not allow a plaintiff to amend a complaint if the amendment would not serve to cure the defective pleading.  *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).  In this case, there is no indication that a more carefully worded complaint would make Mr. Davis' complaint sufficient to state a valid cause of action within the jurisdictional purview of the federal district court.  *See Hall v. United Ins. Co. of Am.*, 267 F.3d 1255, 1263 (11th Cir. 2004).

---

[8] Given the factual circumstances in this case, I can only conclude that Judge Garcia-Wood restricted Mr. Davis' record access through the domestic violence injunction.

CONCLUSION

For the reasons explained in this Order, I hereby **ORDER and ADJUDGE** that the motions to dismiss filed by Defendants Castle Hill Elementary School and Broward County School Board of Public Instruction (ECF No. 8), Judge Marina Garcia-Wood (ECF No. 26), Alfred Lamberti (ECF No. 27), and Michael Satz (ECF No. 29) are **GRANTED**. The Clerk is directed to **CLOSE** this case. All pending motions are **DENIED** *as moot*.

**DONE and ORDERED** in chambers at Miami, Florida this 31st day of January 2012.

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of Record*